

1140 Avenue of the Americas, 17th Floor, New York, NY 10036
phone: 212-257-4880
www.shapiroarato.com

Alexandra A.E. Shapiro
ashapiro@shapiroarato.com
Direct: 212-257-4881

April 5, 2024

**VIA ECF**

Hon. Lewis J. Liman
United States District Judge
Southern District of New York
500 Pearl Street, Rm. 701
New York, NY 10007

Re: United States v. Bruce Garelick,
23 CR 307 (LJL)

Dear Judge Liman:

Defendant Bruce Garelick respectfully submits this motion *in limine* to exclude Rule 404(b) evidence noticed by the government, and to request the use of a jury questionnaire during voir dire.

### A. The Government's Proffered "Other Act" Evidence Should Be Excluded

On April 1, 2024, the government provided notice of its intent to offer at trial Rule 404(b) evidence involving Garelick's 2021 tax return. The proffered evidence is described as Mr. Garelick's "failure to report" on his 2021 tax return approximately $50,000 in profits realized from his sale of DWAC securities in October 2021. The notice states that the government anticipates offering this "failure to report" "as evidence of intent, plan, knowledge, absence of mistake, and state of mind for the securities charges against Garelick." The government further maintains that this alleged "bad act is also admissible as direct evidence of the charges in the Superseding Indictment." The government is wrong, and the evidence should be excluded.

The threshold issue with the government's proffer is that it rests on a false premise. There was no "failure to report." Indeed, Mr. Garelick had no reporting obligation whatsoever because his 2021 purchases and sales of DWAC securities were all made in his Fidelity Rollover IRA account.[1] As the government surely knows, the chief benefit of an IRA is that "amounts in your IRA (including earnings and gains) aren't taxed until distributed."[2]

---

[1] If necessary, we can provide the Court with a copy of the relevant Fidelity statements.

[2] IRS Publication 590-B (2021), Distributions from Individual Retirement Arrangements (IRAs), available at https://www.irs.gov/pub/irs-prior/p590b--2021.pdf; *see also* 26 U.S.C. § 408(d)(1) (distributions "shall be included in gross income").

In 2021, Mr. Garelick made no distributions from his Rollover IRA and was not required to make any distributions. He received no Form 1099-R[3] from Fidelity and had no taxable IRA distributions to report to the IRS. Accordingly, when filing his 2021 taxes, he reported no IRA distributions on lines 4a and 4b of his Form 1040.[4] Mr. Garelick's conduct was entirely consistent with the law—there was no "failure to report" and no "bad act."

To satisfy Rule 404(b)'s "relevance inquiry," the bad act evidence must be sufficiently probative "to permit the jury reasonably to draw from that act the [state of mind] inference advocated by the proponent of the evidence." *United States v. Curley*, 639 F.3d 50, 57 (2d Cir. 2011) (alterations in original). The evidence is inadmissible if it "is not sufficiently similar to the charged conduct or if the chain of inferences necessary to connect [the] evidence with the ultimate fact to be proved [is] unduly long." *Id.* (alterations in original, internal quotation marks omitted). Mr. Garelick's alleged conduct in connection with his 2021 tax return was entirely proper, and thus fails to support the illicit state of mind inference suggested by the government. For the same reason, the noticed evidence is also separately inadmissible under Rules 401 and 403, as it lacks any probative value and, if admitted under the guise of a purported "bad act," would unfairly prejudice the defense, confuse the issues, and mislead the jury.

For the foregoing reasons, any evidence concerning Mr. Garelick's alleged "failure to report" DWAC trading profits on his 2021 tax return is inadmissible under Rules 404(b), 401, and 403, and should be excluded.

### B. The Court Should Use A Written Questionnaire As Part Of Voir Dire

Defendant Garelick further requests the use of a jury questionnaire to facilitate a fair voir dire. A proposed questionnaire is attached as Exhibit A.

"District courts routinely employ questionnaires to facilitate voir dire in a number of circumstances," and the "use of such a procedure as a preliminary screening tool falls well within the district court's broad discretion." *United States v. Quinones*, 511 F.3d 289, 299-300 (2d Cir. 2007). A questionnaire is especially appropriate where, as here, "there has been extensive pre-trial publicity." *Id.* at 299; *see also United States v. Sattar*, 395 F. Supp. 2d 66, 70 (S.D.N.Y. 2005) (using a juror questionnaire "[d]ue to the extensive publicity surrounding this case"); *United States v. Stewart*, 317 F. Supp. 2d 432, 435 (S.D.N.Y. 2004) (using a juror questionnaire "[b]ecause the extraordinary publicity surrounding the case presaged difficulty in finding an unopinionated jury pool"), *aff'd,* 433 F.3d 273 (2d Cir. 2006).

It is highly unusual for an insider trading case to be presented to a jury against so politically-charged a backdrop. This case is not about politics, political parties, or the upcoming presidential election. However, the evidence will inevitably focus on the polarizing figure of

---

[3] *See* IRS Instructions for Forms 1099-R and 5498 (2021), available at https://www.irs.gov/pub/irs-prior/i1099r--2021.pdf; *see also* 26 U.S.C. § 408(i) (1099-R reports not required unless "distributions aggregat[e] $10 or more in any calendar year").

[4] *See* IRS 1040 Instructions (2021), available at https://www.irs.gov/pub/irs-prior/i1040gi--2021.pdf.

Hon. Lewis J. Liman
April 5, 2024

former president Donald J. Trump, the presumptive Republican candidate in the upcoming election, his company Trump Media & Technology Group ("TMTG"), and his social media platform, Truth Social. Mr. Garelick was a director of the SPAC that merged with TMTG, and he, along with his employer and other investors in the SPAC, may be associated in the minds of some jurors with a political faction to which they have a strong, even visceral, reaction. Given the political leanings of the jury pool in this District, we have a significant concern that Mr. Garelick may be prejudged simply based on his perceived association with Mr. Trump. A written questionnaire that provides jurors with an opportunity to consider and address potential biases will go some distance to addressing these concerns.

It is also highly unusual for an insider trading case to center on a stock that has been so extensively covered by the news media in the month leading up to trial. The DWAC/TMTG merger closed on March 25, and the precipitous rise and then fall of TMTG stock under the ticker DJT, the personal financial benefit that Mr. Trump may realize from the merger, and efforts to drive the stock up (and to short it), have been the subject of extensive publicity, much of it involving a healthy dose of schadenfreude.[5] The pleas entered by the Shvartsman brothers, and the government's apparently ongoing investigation, also received widespread coverage.[6] Potentially adding to the publicity surrounding this case is the fact that Mr. Trump himself is scheduled to begin trial on April 15, 2024, across the street from the federal courthouse.

Juror bias must be sussed out in the jury selection process if all parties to this case are to receive a fair trial and a neutral jury. Indeed, the Second Circuit has not hesitated to reverse District Courts when juror bias in not adequately addressed during the jury selection process. *See United States v. Nieves*, 58 F.4th 623 (2d Cir. 2023).

For myriad reasons, jurors are likely to be reluctant to acknowledge their biases orally during voir dire—particularly biases involving Mr. Trump. Those jurors who loathe Mr. Trump may be reluctant to say so in open court; those who admire Mr. Trump may be afraid to acknowledge their admiration publicly in a Manhattan courtroom. All these fears melt away when a juror is asked to fill out a questionnaire privately, and a questionnaire will better equip the Court and parties to understand which prospective jurors should be excused for cause based

---

[5] *See, e.g.*, "Trump's Media Company Worth Nearly $8 billion on First Trading Day," N.Y. Times, Mar. 27, 2024, https://www.nytimes.com/2024/03/26/business/trump-media-stock.html; "Trump Media Shares Slump as Early Fervor Fades," N.Y. Times, Apr. 1, 2024, https://www.nytimes.com/2024/04/01/business/trump-media-stock.html; "Traders Are Betting Millions That Trump Media Will Tumble," N.Y. Times, Apr. 3, 2024, https://www.nytimes.com/2024/04/03/business/trump-media-short-selling.html; "My Wild Ride as a DJT Day Trader," Wall Street Journal, Apr. 4, 2024, https://www.wsj.com/articles/my-wild-ride-as-a-djt-day-trader-24c6c06d.

[6] *See, e.g.*, "2 Brothers in Trump Media Insider-Trading Scheme Plead Guilty," Apr. 3, 2024, N.Y. Times, https://www.nytimes.com/2024/04/03/business/trump-media-insider-trading-guilty.html; "Trump Media saved in 2022 by Russian-American under criminal investigation," The Guardian, Apr. 3, 2024, https://www.theguardian.com/us-news/2024/apr/03/trump-media-es-family-trust-2022-loans.

Hon. Lewis J. Liman
April 5, 2024

on an inability to consider objectively a case involving Mr. Trump and his social media company.

    A questionnaire will also make jury selection quicker and smoother.  If the Court uses a written questionnaire, much of the detailed oral questioning suggested in the proposed voir dire may be obviated.

    The Court should thus utilize a jury questionnaire in the jury selection process to address the issues of bias for and against Mr. Trump and awareness of the recent media onslaught as to the merger at the center of this case.

Respectfully submitted,

/s/Alexandra A.E. Shapiro

Alexandra A.E. Shapiro
Jonathan P. Bach
Julian S. Brod
Jason A. Driscoll

*Counsel for Bruce Garelick*

cc:
Counsel of Record (via ECF)