

1140 Avenue of the Americas, 17th Floor, New York, NY 10036
phone: 212-257-4880
www.shapiroarato.com

Jonathan P. Bach
jbach@shapiroarato.com
Direct: 212-257-4897

November 4, 2024

VIA ECF

Hon. Lewis J. Liman
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

    Re:    *United States v. Bruce Garelick*, No. 23 Cr. 307 (LJL)

Dear Judge Liman,

    On behalf of defendant Bruce Garelick, we respectfully submit this reply to the government's sentencing submission.

    The government presents an extended narrative largely unsupported by record citations, drawing every inference in the government's favor and speculating about events as to which there is no evidence. For example, there is no evidence that Michael Shvartsman nominated Bruce to the DWAC board so that Bruce would "focus[] on the potential DWAC-Trump Media and inform[] Shvartsman of the negotiations' progress." (Gov. Ltr. at 2). To the contrary, the available evidence indicates that Bruce saw his nomination to the board as a bona fide appointment based on Shvartsman's important role in raising founders' round capital. Bruce's actions on the board bear out his good faith. Notably, while Bruce was, like other board members, generally supportive of the board's direction of travel towards the TMTG merger agreement, he was one of the only directors to raise concerns about the merger. Specifically, on October 7, 2021, Bruce emailed the board noting several positives and two major negatives—the absence of "revenue modeling/forecasts" or information on "monetization levers" and the lack of planning for "'what if' governance and business continuation situations if Trump runs for President again, gets thrown in jail, apple/google app stores ban TMG offerings, etc." (GX470; Tr. 1163-66). The raising of concerns against his own and Shvartsman's financial interest did not require the jury to acquit. However, it cannot be squared with the government's position that Bruce was a stooge placed on the board to push the merger through and tip his boss to inside information.

    There is also no evidence that Bruce "encouraged Michael Shvartsman and … Eric Hannelius to purchase additional DWAC warrants in the open market." (Gov. Ltr. at 3). Bruce discussed DWAC warrants with Shvartsman early in the summer and notified Shvartsman when warrants became available, reminding him that Ben Reed at E.F. Hutton was his "contact to trade." (GX747; Tr. 1277-78). There is no evidence that Bruce's "encouragement" of Shvartsman's warrant purchases went any further. Indeed, when Bruce did "recommend starting

to buy more" DWAC securities—as he did on September 20, 2021, before attending his first DWAC board meeting—he did so expressly. (GX746). There is no evidence Bruce "continued to update Shvartsman as the merger agreement moved closer to signature." (Gov. Ltr. at 3). There is no evidence Bruce encouraged Hannelius to buy DWAC warrants. (*Id.*)

The government's obstruction arguments are weak, and the government distorts Bruce's testimony in an effort to come up with supposed lies.

For example, Bruce did not testify that "Rocket One's investment position in DWAC warrants was based on a Black Scholes model and an effort to arbitrage" or that "he and Shvartsman … decided, independent of knowing that Trump Media was a DWAC target, to trade in DWAC warrants … as an options strategy based on the generic Black Scholes model." (Gov. Ltr. at 8). He did testify that early on, four days before the initial June 18, 2021 Michael Shvartsman asked him to look into the arbitrage potential of the warrants. (Tr. 1129-30). This request was documented in a message exchange between Shvartsman and Garelick on June 14. (DX77; Tr. 1128-30). Michael's early interest in warrants was also documented in a message exchange between Wachter and Orlando on June 17 and confirmed by Wachter's testimony that he "must have" told Orlando about Shvartman's interest in warrants. (DX75.4; Tr. 349-50). Bruce also testified that Shvartsman asked him to look into the underlying value of the warrants and that he conducted a Black Scholes analysis using an online calculator. (Tr. 1128, 1131-35). Online calculations would not leave any paper record of the type the government contends does not exist. Nor does GX477, which the Court excluded on hearsay grounds, contradict Bruce's testimony. No-one disputes that Shvartsman was interested in DWAC because of the possibility of a merger with TMTG that Orlando dangled at the initial meetings. Bruce did not deny that.

Bruce also did not lie when he testified that that he stopped trading on September 23, 2021 because that afternoon saw the "start of a drumbeat" of activity on the DWAC board concerning a potential DWAC-TMTG merger. (Gov. Ltr. at 7; Tr. 1241, 1258-59). This testimony may not have been sufficient to convince the jury of Bruce's good faith, but it was the truth. Nothing in the jury's verdict required it to reject this testimony, nor is there any reason to think that it wasn't true. The afternoon of September 23, 2021 and the following week saw a significant ramping up of activity leading towards a merger agreement—discussion of a possible "press release," a visit to TMTG "headquarters in Atlanta," the opening of a "data room," "due diligence … kicking into high gear" (GX511 at 8-13)—and there is no reason to doubt Bruce's testimony that he stopped trading because of that increased activity.

The government's other obstruction arguments consist of general claims that Bruce minimized his belief in the likelihood of the merger or lied about his intent when he traded or communicated with Shvartsman concerning DWAC securities. (Gov. Ltr. at 7-9). Plainly, the jury decided that Bruce had criminal intent, but this is not the stuff of an obstruction enhancement, as the government elsewhere appears to acknowledge. (Gov. Ltr. at 11 ("the defendant did not merely take the stand to say he was innocent and did not act with a guilty mind")).

Hon. Lewis J. Liman  
November 4, 2024

Page 3



Finally, we note the government's expressed views that Bruce acted to "ingratiate[e] himself to his boss" and that "purely from the position of offense conduct," Bruce "is less culpable than Michael Shvartsman and no more culpable than Gerald Shvartsman." (Gov. Ltr. at 1, 14). We would respectfully submit that Bruce is the least culpable of the three and request that the Court impose sentence accordingly.

Respectfully submitted,

/s/ Jonathan P. Bach

Jonathan P. Bach